**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-cv-688**

| | |
|---|---|
| **SKYLINE STEEL, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TOMAS ANTONIO CABRERA BAEZ,**<br><br>**Defendant.** | **VERIFIED COMPLAINT** |

Plaintiff Skyline Steel, LLC ("Skyline") alleges and says as follows:

## INTRODUCTION

1. Skyline commences this action against Defendant Tomas Antonio Cabrera Baez ("Cabrera") to recover and safeguard its confidential information and trade secrets. In the months leading up to his resignation, Cabrera formed his own company, saved Skyline's confidential information and trade secrets on a personal external hard drive in a folder named after his newly formed company, and then went to work for a competitor of Skyline.

2. A forensic examination performed by Skyline following his resignation confirmed that the information unlawfully appropriated by Cabrera included Skyline's confidential business information, including its proprietary engineering and cost data; customer and vendor information; competitively sensitive information related to contract bids, and proposals submitted by Skyline. As just one example, on the same day he resigned, Cabrera connected his personal external hard drive to his Skyline-issued laptop for seven hours and accessed bid documents associated with at least two active projects, including bid information for a billion-dollar construction project commissioned by the Department of War.

3. Skyline is a leading distributor of steel foundation products. In that capacity, Skyline distributes steel foundation products to service projects in the infrastructure and construction industries. Skyline also processes and fabricates piling and geostructural steel products.

4. Cabrera worked as a District Sales Manager ("DSM") for Skyline.

5. In his role as a DSM, Cabrera was responsible for soliciting, obtaining, and managing steel business on behalf of Skyline throughout Florida, the Caribbean and Latin America. Cabrera had access to Skyline's confidential business information in connection with his position as a Skyline DSM, including pricing, profitability, cost structures, contractual terms, market and sales strategy, customers, prospective customers, customer needs, and bid information.

6. In connection with his employment, Cabrera entered into a Confidentiality and Invention Assignment Agreement (the "Agreement") with Skyline. In the Agreement, Cabrera promised, among other things, to maintain the confidentiality of Skyline's "Confidential Information" and return all Skyline Confidential Information and property to Skyline upon the termination of his employment. Cabrera did not honor his obligations under the Agreement.

7. On or about April 15, 2026, Cabrera used his Skyline-provided laptop to access files saved on a personal external hard drive named "Tomas A. Cabrera Big Steel Employment 04-15-2026" and "Tomas Cabrera offer letter."

8. Just five days later – on April 20, 2026 – Cabrera and others formed a Florida limited liability company named ATC Steel Trading LLC. Cabrera is listed as a manager of the company.

9. That very same day, Cabrera created a folder on his personal external hard drive named "ATC STEEL TRADING." Cabrera then copied numerous Skyline confidential documents to this "ATC STEEL TRADING" folder.

10. In the weeks and months leading up to his resignation, Cabrera improperly copied onto his personal external hard drive dozens of files containing Skyline's confidential business information, including proprietary pricing tools and cost calculators; internal sales data; quotes, shipping and freight information; internal job information sheets setting forth the amounts for specific contracts; and information provided by Skyline to its DSMs to facilitate bid preparation, including extensive pricing formulas, engineering data, and specifications.

11. On June 15, 2026 – the date of his resignation – Cabrera was working on multiple business opportunities for Skyline in various stages of progression, including some that had not yet been awarded.

12. In addition to being listed as a manager of ATC Steel Trading, LLC, Cabrera now also works as a Senior Sales Executive for BIG Steel, LLC ("Big Steel").

13. Big Steel is a steel distributor or broker that sells products similar to those manufactured and sold by Skyline, including steel foundation products.

14. When Cabrera resigned from Skyline on June 15, 2026, his personal external hard drive contained numerous competitively sensitive Skyline documents, including spreadsheets reflecting Skyline's proprietary pricing and profitability analyses. Cabrera never informed Skyline that he had copied those documents from Skyline's systems onto a personal external drive, nor did he return the documents to Skyline as he was required to do under the terms of the Agreement.

15. As a result, Skyline's confidential information and trade secrets are now in the hands of a former employee working for a competitor, which threatens to cause Skyline irreparable

harm. With Skyline's proprietary data, cost structures, and profit margins, a competitor could calculate Skyline's exact cost structure and determine the minimum price at which Skyline could profitably bid on a project.

16. As a result, Skyline has filed this action seeking injunctive relief and other available relief for Cabrera's unlawful conduct.

## PARTIES AND JURISDICTION

17. Plaintiff Skyline is a Delaware limited liability company with its principal place of business in Rock Hill, South Carolina.

18. Plaintiff Skyline's sole member is Nucor Saturn Holding Inc. ("NSH"). NSH is a Delaware corporation with its principal place of business in Charlotte, North Carolina. NSH is a wholly owned subsidiary of Nucor Corporation.

19. Nucor Corporation is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

20. Defendant Cabrera is a resident of Oviedo, Seminole County, Florida. Cabrera was employed by Skyline from May 28, 2013, until June 15, 2026.

21. Pursuant to the Agreement, Cabrera agreed that any legal action relating to the Agreement shall be filed and maintained before any state or federal court sitting in either (a) the location where Cabrera was last employed by Skyline, or (b) Mecklenburg County, North Carolina, to the exclusion of any other jurisdiction.

22. Cabrera further agreed to submit to the jurisdiction of such courts and waive any right to challenge or otherwise object to personal jurisdiction or venue in any action commenced in such courts.

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under and involve questions of federal law, namely the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Cabrera consented to venue in Mecklenburg County, North Carolina, which is located in this District.

## CABRERA'S CONFIDENTIALITY AGREEMENT

26. In connection with his employment with Skyline, Cabrera entered into the Agreement, which is attached to this Complaint as **Exhibit 1**. In the Agreement, Cabrera expressly covenanted and agreed that he would not, either during his employment with Skyline or following termination of his employment, take, use, or disclose Skyline's confidential and proprietary information, including trade secrets. Specifically, the Agreement provides:

> **1. Non-Disclosure of Confidential Information.** During my employment with SKYLINE/NUCOR, I acknowledge and agree that from time to time I will have access to, come in contact with, or use SKYLINE/NUCOR "Confidential Information" (defined below in Section 2). I expressly covenant and agree that I will not, either during my employment with SKYLINE/NUCOR or following termination of my employment with SKYLINE/NUCOR: (a) use any Confidential Information, except during my employment with and exclusively for the benefit of SKYLINE/NUCOR (b) reveal, disclose or publish any Confidential Information to any entity outside SKYLINE/NUCOR, except during my employment with SKYLINE/NUCOR at the specific direction of SKYLINE/NUCOR and only in connection with the business of SKYLINE/NUCOR or (c) **remove, transfer or aid in the removal or transfer from SKYLINE/NUCOR premises, systems or wherever Confidential Information is maintained or stored by SKYLINE/NUCOR, any Confidential Information, regardless of the medium on which such Confidential Information resides.** In addition to every other covenant of this Agreement, with regard to Confidential Information

> that constitutes a trade secret (each a "SKYLINE/NUCOR Trade Secret"), I expressly covenant and agree not to disclose or use any SKYLINE/NUCOR Trade Secret until such time as the SKYLINE/NUCOR Trade Secret no longer qualifies as a trade secret under applicable laws. **I acknowledge and agree that all Confidential Information as defined below is SKYLINE/NUCOR property and shall remain so.**

(Ex. 1 ¶ 1 (emphasis added).)

27. The Agreement defines "Confidential Information" as follows:

> **[A]ny and all of SKYLINE/NUCOR information, trade secrets, materials, drawings, files, reports, specifications, photographs, software and data**, including derivatives of any of the foregoing, regardless of media, that is not generally known to third persons including, but not limited to, information trade secrets, materials, drawings, files, reports, specifications, photographs, software and data relating to SKYLINE/NUCOR: plant designs, specifications, and layouts; equipment and machinery designs, specifications and layouts; product designs, formulas and specifications; processes, formulas, and methodologies; source code, object code and user's manuals; manufacturing (including but not limited to melting, casting, rolling and coating) processes, procedures and specifications; equipment designs and specifications; data processing programs; research and development projects; **product marketing, pricing, and cost data; customer and/or vendor identity, requirements, needs and specifications; and SKYLINE/NUCOR financial, business strategy or market projections data.**

(Ex. 1 ¶ 2 (emphasis added).)

28. The Agreement also requires Cabrera, at the end of his employment or at any time upon request of Skyline, to immediately return to Skyline any and all Skyline property, including Confidential Information. Specifically, the Agreement provides:

> **3. <u>Return of Property</u>. At the end of my employment, or at any time upon request of SKYLINE/NUCOR, I shall (a) immediately return to SKYLINE/NUCOR any and all SKYLINE/NUCOR property (including without limitation Confidential Information), whether in printed, computerized, digitized, written, or other form,** whether prepared by SKYLINE/NUCOR or by Employee, including but not limited to

> keys, access cards, computers, identification badges, disks, CD-ROMS, jump drives, handbooks, manuals and procedures (collectively "SKYLINE/NUCOR Property"); **(b) immediately provide to SKYLINE/NUCOR a copy of all SKYLINE/NUCOR Property existing on my personal equipment (including but not limited to computers, personal digital assistants, phones, or other devices that could be used for the storage of such data) and immediately thereafter I shall remove such SKYLINE/NUCOR Property from all of my personal equipment and provide to SKYLINE/NUCOR written certification of such removal,** (c) identify any third parties to whom I provided SKYLINE/NUCOR Property; and (d) not at any time thereafter copy, reproduce, recreate or otherwise enable the disclosure or use of Confidential Information. I understand that all media (e.g. CD's, disks, and jump or flash drives) on which I electronically store or copy any Confidential Information, including personal equipment from which I do not delete all Confidential Information, shall be the property of SKYLINE/NUCOR and shall be returned to SKYLINE/NUCOR upon termination of my employment.

(Ex. 1 ¶ 3 (emphasis added).)

29. Finally, Cabrera consented to injunctive relief for breaching any of these provisions:

> **8. <u>Remedies</u>**. I agree, covenant, and acknowledge that because the breach or threatened breach of any of the covenants contained in Sections 1, 3, 4 and 5 will result in immediate and irreparable injury to SKYLINE/NUCOR and that SKYLINE/NUCOR shall be entitled to an injunction restraining me from any violations of Sections 1, 3, 4 and 5 without the need to post a bond. Should SKYLINE/NUCOR file suit to enforce the covenants contained in this Agreement, SKYLINE/NUCOR shall be entitled to recover any and all damages permitted by law, including its costs incurred in prosecuting such suit, and its reasonable attorneys' fees.

(Ex. 1 ¶ 8.)

## <u>CABRERA'S EMPLOYMENT WITH SKYLINE</u>

30. Skyline is the steel foundation distributor for Nucor Corporation's steel products segment. In that capacity, Skyline distributes steel products to service projects in the infrastructure

and construction industries. Skyline also processes and fabricates piling and geostructural steel products.

31. The market for steel products is highly competitive. Skyline's steel products businesses compete on price and service (e.g., by facilitating logistics and timeliness of order fulfillment), as well as quality. Skyline's competitive position in the market for steel products depends, in part, on its ability to protect its proprietary pricing, cost structures, and customer information from competitors around the world.

32. As a Skyline DSM, Cabrera was responsible for pursuing, securing, and overseeing Skyline's steel sales throughout Florida, in the Caribbean, and in Latin America. His duties included developing relationships with current and prospective customers, negotiating contract terms, and managing pricing and bid strategies for specific projects across his territory. To facilitate Cabrera's performance of these duties, Skyline provided him with access to Confidential Information as set forth in Paragraph 5.

33. For example, Cabrera had access to Skyline's internal pricing calculators, including the "Pipe Quick Cal prices" tool, which contains cost-per-ton figures, CIF (cost, insurance, and freight) costs, selling prices, gross profit per ton, and margin percentages for various pipe configurations.

34. Cabrera also had access to Skyline's proprietary coating pricing structure, including the "Skyline Steel Coating Calculator," which contains complete pricing formulas by geographic region for Skyline's coating applications, including cost per square foot, target selling prices, gross profit per square foot, and profit margin percentages.

35. Additionally, Cabrera had access to Skyline's internal South Region Flash Reports, which contain highly confidential daily business performance data for the region's entire sales

team, including year-to-date and month-to-date revenue and gross profits by salesperson, metrics reflecting the value of new bookings and quotes generated, the number of orders entered, and any forecasted backlog.

36. During his employment, Cabrera worked on multiple bid opportunities for Skyline and, in that capacity, submitted bids and quotes on behalf of Skyline for specific projects. Through his work on bid submissions for particular projects, Cabrera worked with and had access to Skyline's bid pricing, internal cost calculations, and actual or proposed contractual terms for those projects.

37. Knowledge of Skyline's Confidential Information described above regarding customers, cost structures, profit margins, and bid information is competitively sensitive and could be used for the benefit of competitors to compete unfairly against Skyline and take away business opportunities with its customers and potential customers.

38. Because of the intensely competitive nature of the steel industry, Skyline closely guards this sensitive and proprietary Confidential Information. Skyline protects its Confidential Information by maintaining that information on a secure computer network controlled by Skyline. Skyline's network is accessible only to employees through password authentication and only for Skyline's business purposes. Skyline further protects its sensitive and proprietary Confidential Information by entering into confidentiality agreements and policies with its employees. Skyline's Confidential Information is not available to the public generally or to Skyline's competitors. Disclosure of the Confidential Information would damage Skyline in a manner that would be difficult to calculate.

## **<u>CABRERA'S UNLAWFUL CONDUCT</u>**

39. On information and belief, beginning in or about late 2025, Cabrera began looking for employment outside Skyline.

40. At approximately the same time, Cabrera was regularly connecting a 2TB WD My Passport external hard drive (the "External Drive") to his Skyline-provided laptop. Cabrera had no business reason for using the External Drive in connection with his work for Skyline, as Skyline maintains its documents on a secure computer network that was accessible to Cabrera throughout his employment. Cabrera's use of the External Drive violated the Agreement, which prohibited Cabrera from removing files from Skyline's secure computer network and from failing to return them to Skyline.

41. On or about April 15, 2026, Cabrera used his Skyline-provided laptop to access files saved on the External Drive named "Tomas A. Cabrera Big Steel Employment 04-15-2026" and "Tomas Cabrera offer letter."

42. On April 20, 2026, Cabrera and others formed a Florida limited liability company named ATC Steel Trading LLC. Cabrera is listed as a manager of the company.

43. That same day, Cabrera created a folder on his External Drive named "ATC STEEL TRADING." Cabrera then copied numerous Skyline confidential documents to this "ATC STEEL TRADING" folder located on the External Drive.

44. On or about June 12, 2026 — one business day before notifying Skyline of his resignation — Cabrera used his Skyline-provided laptop to access and revise a copy of his resignation letter, which was saved to his External Drive. Cabrera then used the External Drive to access several documents with file names matching highly confidential and competitively sensitive Skyline files, confirming that files with those names were saved to his External Drive at that time. The files present on the External Drive and accessed by Cabrera on June 12 included, for example, files with the following file names:

- "Pipe Quick Cal prices.xlsx." – This matches the file name that is used for an internal pipe pricing calculator, which contains Skyline's cost-per-ton figures,

CIF costs, selling prices, gross profit per ton, and margin percentages for various pipe configurations. This information would enable a competitor to calculate Skyline's cost structure and determine the minimum price at which Skyline could profitably bid on a project;

- "Master List – Spreadsheet 08-05-11.xlsx." – This matches the file name that is used for Skyline's proprietary bid pricing workbook. That workbook is comprised of 25 spreadsheets, which together contain over 4,000 formulas used to automatically calculate Skyline's prices based on specific materials identified for the particular product and their attributes (e.g. quantity, length, and weight);

- "Coating Calculator and Target Prices V2.xls." – This matches the file name used for Skyline's coating pricing tool, which contains Skyline's coating pricing structure broken down by region, including cost per square foot, target selling prices, gross profit per square foot, and profit margin percentages; and

- South Region Flash Reports. These PDF files are named according to the dated file naming convention "South Region Flash Report M.DD.YYYY.pdf." This matches the file naming convention used for Skyline's internal South Region Flash Reports, which contain month-to-date and year-to-date financial information and performance metrics, including revenue, gross profit, new bookings, quotes, and orders entered.

45. On June 15, 2026 — the day of his resignation — Cabrera connected the External Drive to his Skyline laptop from 7:24 a.m. until 2:24 p.m. During that approximately seven-hour window, Cabrera accessed numerous Skyline confidential documents contained on its systems.

46. In particular, between 12:20 p.m. and 2:21 p.m., Cabrera accessed bid documents for several Skyline projects. Cabrera disconnected the External Drive for the last time at 2:24 p.m. — just three minutes after accessing a bid document for a billion-dollar construction project commissioned by the Department of War.

47. Cabrera tendered his resignation to Skyline on June 15, 2026 and turned in his Skyline-issued laptop computer and telephone.

48. On information and belief, Cabrera now heads the Florida office for Big Steel, which uses his personal cell number for customers looking for business in that region. Cabrera, through his employment with Big Steel, would benefit from the Confidential Information he

misappropriated onto the External Drive, by utilizing it to assess markets, customer opportunities, costs, prices and bids, including bids for projects in which Skyline is engaged or otherwise competing.

49. Four days after Cabrera's resignation, on June 19, 2026, Skyline sent Cabrera a copy of the Agreement and reminded him of his confidentiality obligations under the Agreement. Cabrera did not respond.

50. After Cabrera's departure, Skyline engaged a forensic investigation firm to image Cabrera's Skyline-provided Dell Latitude laptop. The forensic examination conducted on the image confirmed that Cabrera had connected the External Drive to his Skyline laptop repeatedly in the months leading up to his resignation, had stored Skyline's confidential files on that drive, and had accessed Skyline's bid documents on the day of his resignation while the drive was connected.

51. The forensic firm identified Cabrera's External Drive as a two-terabyte WD My Passport 2626 external hard drive bearing a serial number of WX42AC10XR2S. When connected to Cabrera's Skyline-provided laptop, the External Drive was typically assigned drive letter E:, mounted a volume labeled "TAC PER," and identified by a volume serial number of 0246-9FF7.

52. The forensic examination conducted on the image of Cabrera's Skyline-provided laptop included, among other data, recovered LNK files. The Windows operating system generates a LNK file when the user accesses a file on the system via certain means, such as double-clicking on a file. Each LNK file provides information about the corresponding underlying file that the user accessed, including its file path, volume serial number, and volume name. Each LNK file also includes a timestamp reflecting when the user accessed the file.

53. The LNK files recovered from Cabrera's Skyline-provided laptop show that, while the External Drive was connected, Cabrera accessed numerous files stored there, as indicated by a file path beginning E:\, a volume name "TAC PER", and a volume serial number of 02469-FF7.

54. According to the forensic investigation of the LNK files and other recovered data, dozens of files (if not more) containing Skyline's Confidential Information were among those stored on Cabrera's External Drive. For example, the LNK file records show that, in the weeks and days prior to his resignation, Cabrera accessed files with the following file names that were stored on his External Drive:

- "Power Bi Sales 2026 - 2025 data for TC.xlsx," accessed June 3 at 2:11 PM;
- "South Region Flash Report 6.11.2026.pdf," accessed June 12 at 6:10 PM;
- "South Region Flash Report 5.29.2026.pdf," accessed June 12 at 6:17 PM;
- "South Region Flash Report 5.1.2026.pdf," accessed June 12 at 6:19 PM;
- "Coating Calculator and Target Prices V2.xlsx," accessed June 12 at 6:59 PM;
- "Master List Spreadsheet 08-05-11.xlsx," accessed June 12 at 7 PM;
- "Pipe Quick Cal prices.xlsx," accessed June 12 at 7:01 PM;
- "South Region Flash Report 6.12.2026.pdf," accessed June 15 at 9:37 AM.

55. Cabrera did not return the Skyline materials stored on the External Drive, nor did he disclose to Skyline that he had taken the documents. Absent its own investigation, Skyline may never have learned that its former employee removed highly sensitive Confidential Information from Skyline's secure system with the intent to use that information to compete against Skyline. The LNK files recovered from Cabrera's laptop showed that dozens of files containing Skyline's Confidential Information were among those stored on the External Drive.

56. Cabrera had no lawful or business purpose for storing Skyline's Confidential Information on his External Drive. He took this information from Skyline for his own personal use, including for the benefit of a competitor.

57. On the morning of August 20, 2026, Skyline, through its outside counsel, demanded that Cabrera: (1) immediately return any and all Confidential Information to Skyline; (2) produce the External Drive and any other electronic device on which Skyline's information resides to Skyline for forensic imaging; (3) immediately cease and desist from accessing, deleting, copying, or using any information copied or downloaded from Skyline's systems, including any information located or previously located in the "ATC STEEL TRADING" folder on the External Drive. A copy of Skyline's demand, which was sent via email, text message, and Federal Express, is attached to this Complaint as **Exhibit 2**.

58. In its demand, Skyline notified Cabrera that, should he not timely comply, Skyline would commence legal action against him in this Court and seek a temporary restraining order and preliminary injunction against him.

59. Cabrera did not respond to this demand. Instead, a lawyer in Tennessee representing Big Steel sent correspondence on the evening of August 20, 2026 purporting to "confirm that Mr. Cabrera has not used or disclosed any Skyline Confidential Information to Big Steel" and that "Big Steel is not aware of Mr. Cabrera disclosing" such information "to any third party." Counsel did not indicate what, if any, investigation had been made before making these assertions. Big Steel's counsel indicated that Cabrera "was willing to return" Skyline's confidential information (on some unidentified timetable), but refused to confirm or even entertain that Cabrera would return the External Drive. Instead, Big Steel's counsel proposed only that Cabrera, and not Skyline or its forensic consultants, look for and attest to his possession of Skyline's information.

60. Accordingly, to prevent continued irreparable harm from Cabrera's violation of his confidentiality and return-of-property covenants, Skyline has been compelled to file this lawsuit to obtain injunctive relief restraining Cabrera from further unlawful actions, as well as damages.

**COUNT I**
**Breach of Contract**

61. The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

62. The Agreement is a valid, binding and enforceable contract between Skyline and Cabrera.

63. Cabrera has breached the Agreement by taking without authorization Skyline's Confidential Information and property for his own benefit and use, by storing Skyline's Confidential Information on his personal external hard drive, and by failing to return Skyline's Confidential Information and property by no later than the end of his employment.

64. As a direct and proximate result of these actions, Skyline has been damaged and is entitled to the relief set out below.

**COUNT II**
**Violation of the Federal Defend Trade Secrets Act**

65. The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

66. The information contained in the files that Cabrera stored on his personal External Drive constituted Skyline's confidential trade secrets that are used in, and are intended to be used in, interstate or foreign commerce.

67. The information Cabrera took included information that was not generally known and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

68. Skyline derived commercial value, both actual and potential, from the information Cabrera misappropriated as a result of keeping it secret.

69. Skyline undertook reasonable efforts under the circumstances to maintain the secrecy of the information Cabrera chose unlawfully to store on his personal External Drive.

70. Cabrera misappropriated Skyline's trade secrets by secretly storing them on his personal External Drive. He acquired these trade secrets through such improper means.

71. Cabrera knew that the information he took contained Skyline's trade secrets. He acted in bad faith and his misappropriation was willful and malicious.

72. As a direct and proximate result of these actions, Skyline has been damaged and is entitled to the relief set out below pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

## COUNT III
## Violation of Trade Secrets Protection Statutes
## Fla. Stat. §§ 688.001-688.009
## S.C. Code §§ 39-8-10 to 39-8-130

73. The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

74. The information contained in the files that Cabrera stored on his personal External Drive constituted Skyline's confidential trade secrets.

75. The information Cabrera took included information that was not generally known and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

76. Skyline derived commercial value, both actual and potential, from the information Cabrera misappropriated as a result of keeping it secret.

77. Skyline undertook reasonable efforts under the circumstances to maintain the secrecy of the information Cabrera chose unlawfully to store on his personal External Drive.

78. Cabrera misappropriated Skyline's trade secrets by secretly storing them on his personal External Drive. He acquired these trade secrets through such improper means.

79. Cabrera knew that the information he took contained Skyline's trade secrets. He acted in bad faith and his misappropriation was willful and malicious.

80. As a direct and proximate result of these actions, Skyline has been damaged and is entitled to the relief set out below. Cabrera's actions will cause irreparable harm to Skyline that cannot be adequately compensated by monetary damages and preliminary and permanent injunctive relief is necessary to preserve the status quo, to protect Skyline's rights, and to prevent injury to Skyline. In addition, Skyline is entitled to monetary damages for actual damages that are directly and proximately caused by the conduct described above, as well as exemplary and punitive damages, and recovery of its reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Skyline respectfully requests the Court to:

1. Enter preliminary and permanent injunctive relief (a) prohibiting Cabrera's use, of Skyline's trade secrets and Confidential Information, including, but not limited to, any use by Cabrera of Skyline's trade secrets and Confidential Information in connection with soliciting Skyline's customers or potential customers; (b) prohibiting Cabrera's disclosure or retention of Skyline's trade secrets and Confidential Information; (c) prohibiting Cabrera from accessing, destroying, removing, transferring, copying, sharing or altering any documents or tangible things that constitute Confidential Information or that belong to Skyline, including without limitation all data and information on Cabrera's WD My Passport external hard drive and any other computer files and electronic data; and (d) requiring Cabrera to produce for imaging and forensic inspection

any and all devices that have or previously contained Skyline Confidential Information and trade secrets, including without limitation Cabrera's WD My Passport external hard drive and any other devices in his possession, custody, or control;

2. Order the deletion of all Confidential Information and trade secrets by a qualified forensic examiner from Cabrera's personal email or devices under the control of Cabrera, after the inspection and imaging of such devices or information, as set forth above;

3. Award Skyline compensatory damages, together with punitive damages, in an amount to be proven at trial;

4. Award Skyline exemplary and punitive damages allowed by law;

5. Award Skyline its reasonable attorneys' fees; and

6. Award Skyline such other and further relief as this Court deems proper.

[*Signature on next page*]

This 21st day of August, 2026.


/s/ David C. Wright, III
David C. Wright, III
N.C. Bar No. 11161
DWright@rbh.com

Douglas M. Jarrell
N.C. Bar No. 21138
DJarrell@rbh.com

Benjamin C. DeCelle
N.C. Bar No. 52102
BDecelle@rbh.com

Emma T. Kutteh
N.C. Bar No. 58214
EKutteh@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Ste. 2300
Charlotte, North Carolina 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000

***Attorneys for Plaintiff Skyline Steel, LLC***

## VERIFICATION

I, Donald A. Barney, President of Skyline Steel, LLC, the Plaintiff in this action, have read the foregoing **VERIFIED COMPLAINT** and hereby declare under penalty of perjury that the contents thereof are true and correct based upon information known to me personally, information set forth in public sources and information provided to me through company records or by persons with personal knowledge.

Executed on the 21st day of August, 2026.

Donald A. Barney

## VERIFICATION

I, Clark C. Walton, Managing Director of Reliance Forensics, have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof. Based upon information known to me personally and information provided to me by persons with personal knowledge working under my supervision, I affirm, under the penalties for perjury, that the representations regarding the imaging and forensic examination of the Dell Latitude laptop issued by Plaintiff Skyline Steel, LLC to Defendant Tomas Antonio Cabrera Baez, are true.

Clark C. Walton, Managing Director
Reliance Forensics

Executed on the 21st day of August, 2026.

20131180